# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERICKA LASKEY, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. CIV-17-441-STE ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 19-36). The

Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 9, 2012, the alleged disability onset date. (TR. 21). At step two, the ALJ determined Ms. Laskey had the following severe impairments: Chiari I malformation; migraine headaches; degenerative disc disease; and obesity. (TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 27).

At step four, the ALJ concluded that Ms. Laskey retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant is able to lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently; sit for the total of six hours throughout an eight-hour workday; and stand and/or walk the total of two hours throughout an eight-hour workday. The claimant is able to occasionally kneel, crouch, crawl, stoop, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant is able to balance in order to sit, stand, walk, and perform postural activities that do not involve extraordinary, additional, or unusual balancing, the claimant must avoid all exposure to work at unprotected heights and around hazardous unprotected machinery. The claimant cannot perform any commercial driving.

(TR. 28). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 34). As a result, the ALJ made additional findings at step five.

There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform with her RFC. (TR. 80). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 80-81). The ALJ adopted the testimony of the VE and concluded that Ms. Laskey was not disabled based on her ability to perform the identified jobs. (TR. 35).

### III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in her consideration of: (1) Plaintiff's migraine headaches, (2) Plaintiff's mental impairments, and (3) evidence from three physicians.

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### V.   MIGRAINE HEADACHES

According to Ms. Laskey, the ALJ erred in evaluating Plaintiff's testimony concerning her migraine headaches. (ECF No. 13:5-10). Plaintiff is correct.

3

### A. ALJ's Duty to Evaluate Plaintiff's Testimony

Social Security regulations require a two-step process to evaluate a claimant's subjective allegations. First, the adjudicator must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individuals' pain. Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (July 2, 1996) (SSR 96-7p). Second, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to perform basic work activities. *Id.* In doing so, the ALJ must make a finding on the claimant's credibility based on a consideration of the entire case record, including the individual's own statements about the symptoms. *Id.* When evaluating the credibility of a claimant's allegations, the ALJ must consider factors including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

It is not enough for the ALJ to simply recite the factors, although she need not undergo a formalistic factor-by-factor recitation of the evidence. SSR 96-7p at *4; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). However, in considering the factors, the ALJ must "set[ ] forth the specific evidence [s]he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The ALJ must give specific reasons for the credibility finding, and must be sufficiently specific regarding the weight given to the individual's statements and the reasons for that weight. SSR 96-7p at *4. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

### B. Evidence and Testimony Concerning Migraine Headaches

When asked about the headaches at the hearing, Plaintiff testified:

- they involved pressure, pounding, and throbbing,
- she needed to be in the dark when they occurred,
- they occurred 10 days out of the month, and
- they could last from two hours to three days.

(TR. 72-73).[1]

---

[1] In her opening brief, Plaintiff states that she had "testified she was not to lift more than 10 pounds, but the ALJ has her at medium work." (ECF No. 13:9). Plaintiff's allegation regarding the exertional RFC is false, however, as the RFC stated that Plaintiff was limited to "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant [wa]s able to lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently." (TR. 28).

### C. Error in the ALJ's Credibility Determination

In evaluating Plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, it is found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(TR. 29). In explaining her reasoning, the ALJ acknowledged the various credibility factors,[2] and made statements concerning Plaintiff's testimony and other evidence which involved: (1) Ms. Laskey's daily activities, (2) the location, duration, frequency, and intensity of Ms. Laskey's symptoms, and (3) medications, including side effects, and other treatment Plaintiff sought. (TR. 30). Regarding the location, duration, and frequency of the headaches, the ALJ stated that Plaintiff had testified her migraines occurred once every ten days, during which she must lay down in a dark and quiet room. (TR. 30). And regarding medication and treatment, the ALJ stated that Ms. Laskey had been prescribed and taken appropriate medications for her headaches, with no notations of limiting side effects, and had required emergency room care for her headaches. (TR. 30). According to the ALJ, "these interventions have been relatively effective in controlling the claimant's symptoms." (TR. 30).

Finally, the ALJ concluded that she did not believe "the degree of incapacity incurred" alleged by Plaintiff, and relied on:

- A lack of progressive physical deterioration,
- A finding that Plaintiff's routine had not appeared restricted by her disability, but instead "by choice,"

---

[2] *See supra.*

- Inconsistent statements that Plaintiff had made regarding the level of education that she had completed,

- A notation from consultative psychologist that he believed Plaintiff had been malingering, and

- A notation that Plaintiff once left the emergency room against medical advice when she was suffering a headache.

(TR. 30-31).

Plaintiff takes issue with: (1) the ALJ's statement that the medications and various treatments had been "relatively effective in controlling the claimant's symptoms" and (2) the ALJ's mischaracterization of her testimony regarding the frequency with which she suffered migraine headaches.

First, Plaintiff argues that the ALJ's use of the word "controlling" was "simply wrong" because "the fact that Ms. Laskey had to go to the ER 14 times in 2013 and 22 times in 2014 would indicate to a reasonable person that Ms. Laskey's migraines were not being *controlled* at all[.]" (ECF No. 13:4) (emphasis in original). The Court disagrees, as Plaintiff has mischaracterized the ALJ's statement. The ALJ did not affirmatively state that Plaintiff's migraines had been "controlled" but that the medications and various treatments had been "*relatively effective* in controlling the claimant's symptoms." (TR. 30).

Second, according to Ms. Laskey, the ALJ "wrote a false statement that [the headaches] only occurred every ten (10) days, versus ten (10) times a month." (ECF No. 13:7). According to Plaintiff, the error was critical because "if she had a job, the ER visits and the after effects of the ER treatments for each migraine for even just 1-

2 days a month [ ] would render her unable to perform work during such periods."
(ECF No. 13:4). Ms. Laskey's argument has merit.

At the hearing, Plaintiff stated that she suffered migraine headaches ten days per month, not once every ten days as the ALJ stated in the decision. *Compare* TR. 30 *with* TR. 72. The misstatement is critical, because at the hearing, the VE testified that an individual with two unexcused absences per month would not be able to maintain employment. (TR. 81). Under the ALJ's theory that the headaches occurred only once every ten days, the issue of two or more unexcused absences per month might not be an issue. But if Plaintiff suffered migraines which could last from "a day to three days," ten times per month, she would be unable to sustain employment according to the VE, whose testimony the ALJ adopted. *See* TR. 35.

The ALJ set forth the credibility factors and discounted Plaintiff's allegations by citing specific evidence and providing explanations. *See supra*. On the surface, the ALJ's evaluation is legally sufficient. *See supra*. However, the ALJ's misstatement of Plaintiff's testimony regarding the number of migraines each month directly affected the step five findings regarding Ms. Laskey's ability to work in light of the VE's testimony. It is entirely possible the ALJ did not believe Ms. Laskey regarding the frequency of headaches, but the ALJ's misstatement on the issue impacted her own analysis, and now prevents this Courts from a proper review. Under such circumstances, remand is warranted. *See Hannegan v. Astrue*, 2013 WL 628663, at *2-*7 (W.D. Okla. Jan. 28, 2013) (remanding due to the ALJ's "erroneous factual conclusion" regarding expert testimony concerning the frequency of the plaintiff's migraine headaches). On remand, the ALJ shall re-evaluate Ms. Laskey's testimony

regarding the frequency of her headaches, while also considering any supporting medical evidence on the issue and any evidence regarding her ability to work if the testimony is believed.

Plaintiff also argues that in light of her testimony about the headaches, "the ALJ should have discussed the impact of the migraines on the RFC and included related limitations." (ECF No. 13:14-15). But the Court need not address this issue as it "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## VI. MENTAL IMPAIRMENTS

Ms. Laskey argues that the ALJ erred in failing to consider limitations in the RFC related to her "severe" mental impairments and that the ALJ's discussion of the same at step two was an inadequate substitute for proper findings at step four. (ECF No. 13:10-14). The Court rejects this argument as the ALJ made no step two finding that Plaintiff had suffered from severe mental impairments. *See* TR. 21.

## VII. EVIDENCE FROM THREE EMERGENCY ROOM PHYSICIANS

Finally, Plaintiff cites 23 pages from the record which document her emergency room visits and argues that the ALJ: (1) should have evaluated these opinions utilizing the "treating source rule" and (2) failed to "explain the degree of weight she gave to the opinions." (ECF No. 13:15).[3] The Court rejects Ms. Laskey's allegation of error.

---

[3] Plaintiff actually cites 24 pages from the record, but one of the citing references is titled "Nurses Notes" and would not be evaluated under the "treating source rule." *See* TR. 503; *see generally Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (describing the treating physician's rule).

Under what has become known as the "treating source rule," an ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

Here, the ALJ was under no duty to follow the "treating source rule" because none of the records Plaintiff references constitutes a "medical opinion." Instead, all of the records are emergency room admitting forms, which document Plaintiff's name, address, insurance company, emergency contact, date and time of the visit, and Plaintiff's complaint. *See* TR. 474, 503, 518, 571, 577, 585, 592, 600, 608, 643, 712, 719, 739, 746, 753, 762, 773, 784, 803, 815, 832, 917, 928. But these documents are not considered "medical opinions" which would require a specific evaluation under the "treating source rule." *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or

10

mental restrictions."). Because the records on which Plaintiff relied were not "medical opinions," they required no special treatment by the ALJ.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on January 4, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE